IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

NATE COULTER,                          *
                                       *
                    Plaintiff,         *
vs.                                    *        No. 4:13-cv-00267-SWW
                                       *
                                       *
ROBERT L. WIGGINS, JR. and             *
WIGGINS, CHILDS, QUINN and             *
PANTAZIS LLC,                          *
                                       *
                    Defendants.        *
                                       *
LARRY MCBRIDE, SYLVESTER               *
ROGERS, OZZIE GREEN,                   *
CORNELIUS BENNETT, and                 *
CLIFTON LEE,                           *
                                       *
                    Intervenors,       *

<u>OPINION AND ORDER</u>

        Nate Coulter, an Arkansas attorney, brings this action against Robert L. Wiggins, Jr., an

Alabama attorney, and Wiggins' Alabama law firm, Wiggins, Childs, Quinn and Pantazis, LLC

(collectively, Wiggins), for breach of contract.[1]  Coulter claims that Wiggins has refused to pay

him under the terms of his engagement by Wiggins as local counsel for work he performed in an

employment discrimination action brought by six plaintiffs–*Cornelius Bennett, et al., v. Nucor*

*Corp., et al.,* No. 3:04-cv-00291-SWW (E.D. Ark.) ("*Bennett*")–that went to trial in this Court

and resulted in a jury verdict in the total amount of $1,200,000 ($200,000 to each of the six

plaintiffs).  Coulter claims that as a result of Wiggins' breach of their contract, he is entitled to,

---

[1] This action was originally filed in the Circuit Court of Pulaski County, Arkansas, but it
was removed to this Court by Wiggins on May 2, 2013.

*inter alia*, judgment against Wiggins in the amount of $131,106.82–the amount Coulter claims he is due under the parties' agreement.

Five of the six plaintiffs in *Bennett*–Larry McBride, Ozzie Green, Sylvester Rogers, Cornelius Bennett, and Clifton Lee–have intervened in this action, fearing that Wiggins, who they hired to represent them in the *Bennett* action, intends to satisfy his alleged obligation to Coulter by using sums that intervenors claim are owed to them by Wiggins.[2]  Intervenors assert claims of breach of contract, breach of fiduciary duty, and fraud against Wiggins.

Before the Court are the following motions: (1) motion for summary judgment [doc.#17] by Rogers, Bennett, and Lee against Wiggins; (2) motion for summary judgment [doc.#38] by Wiggins against McBride, Green, Rogers, Bennett, and Lee; and (3) motion for summary judgment [doc.#39] by Wiggins against Coulter.  Responses and replies to these motions have been filed and the matter is ripe for resolution.  For the reasons that follow, the Court denies the motion for summary judgment by Rogers, Bennett, and Lee against Wiggins, denies the motion for summary judgment by Wiggins against McBride, Green, Rogers, Bennett, and Lee, and denies the motion for summary judgment by Wiggins against Coulter.

## I.

In order to pursue the *Bennett* action in this Court, it was necessary for Wiggins to associate as local counsel an attorney who maintains an office for the practice of law in the State of Arkansas and who is authorized to practice in the United States District Court for the Eastern

---

[2] The sixth plaintiff in *Bennett*–Rodney Washington–has not intervened in this action.

District of Arkansas.[3]  Wiggins engaged an Arkansas attorney to serve as local counsel but that

attorney had to withdraw after a conflict arose.  Wiggins subsequently approached Coulter who

agreed to serve as local counsel in the *Bennett* action.[4]

The fee agreement between Wiggins and Coulter was set forth in a series of

correspondence between Wiggins and Coulter in 2007.  In an email dated April 25, 2007,

Coulter outlined the circumstances under which he would serve as local counsel for Wiggins,

stating as follows:

> I will take on this limited roll of serving as local counsel, on the understanding
> that your firm will be advancing all the expenses of the litigation and doing the
> bulk of the motion practice work.
>
> To comply with the code of professional conduct here, I would request that you
> get approval from the clients in writing for me to be associated and to share in the
> fees recovered, if any.  Assuming you have the clients under a fee agreement that
> gives you 40%, I will agree to serve as their Arkansas counsel for one fourth of
> that fee, or 10% of the gross recovery.
>
> I would of course keep my time in order to facilitate a fee petition at the end of
> the case if the plaintiffs prevail.

The following day, April 26, 2007, Wiggins responded to Coulter's email, stating as

follows:

───────────────────

[3] See Rule 83.5(d) of the Local Rules of the United States District Court for the Eastern
and Western Districts of Arkansas ("Any attorney who is a member in good standing of the Bar
of any United States District Court, or of the highest court of any state or territory or insular
possession of the United States, but is not admitted to practice in the District Courts in Arkansas,
may, upon oral or written application, be permitted to appear and participate in a particular case.
The application shall designate a member of the Bar of these Courts who maintains an office in
Arkansas for the practice of law with whom the court and opposing counsel may readily
communicate regarding the conduct of the case.").

[4] Coulter also agreed to serve as local counsel in a separate action, *Danny Lee v. Nucor
Corp., et al.*, No. 3:07-cv-0098-JMM (E.D. Ark.), but only the *Bennett* action is at issue in the
parties' dispute now before the Court.

Thank you for agreeing to help us. The role you outlined in your email is fine with us. If at some point you wish to expand it, we would be happy for you to do so. We traditionally do all the motion practice, paper discovery etc. and try not to burden our local counsel except for key events like hearings or trials.

We will contact Danny and Clifton and get their approval and send you copies for your records. I want to make sure I fully understand the fee splitting you set out in your email. You will take 25% of our 40% of the clients' recovery or ten % of the total clients' recovery. I assume that in addition to this you will submit your lodestar fees, as we will, we [sic] but that you are not seeking 25% of our lodestar-type fee.[5]

. . .

By letter to Coulter dated August 27, 2007, Wiggins summarized their fee agreement in

the *Bennett* and *Lee* actions as follows:

Re:   *Cornelius Bennett, et al., v. Nucor Corp., et al.*
      Case No. 3:04CV00291 SWW
      Eastern District of Arkansas, Jonesboro Division

      *Danny Lee v. Nucor Corp., et al.*
      Case No. 3:07-cv-00098-JMM
      Eastern District of Arkansas, Jonesboro Division

Dear Nate:

Thank you again for agreeing to serve as our local counsel in the above referenced cases.

As previously discussed, attorneys' fees are paid on a contingency basis. You will take 25% of our 40% of the clients' recovery or 10% of the clients' recovery. Costs incurred by both your firm and our firm will be deducted from the clients' recovery before the percentage of your fees and our firms' attorneys' fees are calculated. Separately, and in addition to these fees, you will submit your lodestar fees. We will also submit lodestar fees for our attorneys. You will not receive any percentage of our attorneys' lodestar fees, and likewise we will not receive a percentage of your lodestar.

If this fee arrangement is not acceptable to you, please let us know.

---

[5] These two emails are attached to Coulter's complaint as Exhibits A and B.

We are sending a letter to our clients asking them to authorization [sic] your representation of them in the above-referenced cases.  When we receive the signed authorizations back from our clients, I will forward a copy of them to you.

Thank you again for agreeing to serve as our local counsel.  I look forward to our association.[6]

Wiggins never obtained written approval from the *Bennett* plaintiffs for Coulter to serve as local counsel as Wiggins stated would be done in the emails and letter to Coulter summarizing their fee agreement.[7]  In this respect, Rogers, Bennett, and Lee each state in an affidavit that he never agreed to retain Coulter to represent him and never agreed to pay Coulter any fee.  Wiggins, however, states in an affidavit that the *Bennett* plaintiffs authorized the hiring of Coulter, physically met and consulted with Coulter at the trial of the *Bennett* action, and agreed that Coulter would be paid pursuant to, and as a part of, the 2005 fee and expense contract the *Bennett* plaintiffs entered into with Wiggins.

Wiggins fee and expense contract with the *Bennett* plaintiffs states, *inter alia*, that Wiggins will receive one third of all amounts recovered (excluding expenses) *or* the lodestar fee awarded by the Court, whichever is greater:

---

[6] Wiggins argues that the two emails attached to Coulter's complaint are not in reference to the *Bennett* action but are in reference to the *Lee* action and another separate action.  These emails, however, are entirely consistent with Wiggins' August 27, 2007 letter to Coulter summarizing their fee agreement in the *Bennett* and *Lee* actions.  In this respect, Coulter states, and Wiggins apparently does not dispute, that he sent the two emails to Wiggins in August 2007 to facilitate Wiggins "tak[ing] care of getting the documentation for the Bennett case, our agreement in the Bennett case..."  It seems clear, then, and the letter of August 27, 2007 so evidences, that the fee agreement between Wiggins and Coulter were interrelated as to the *Bennett* and *Lee* actions.

[7] Wiggins has submitted letters he claims he sent the *Bennett* plaintiffs seeking the return of written authorization for Coulter to serve as local counsel but Wiggins only submits unsigned authorization letters.

3.      **Contingent Legal Fees**

Client recognizes that he/she may recover money as a result of a successful
completion of this litigation.  Any recovery will be the result of either an award
by the court or a settlement.  Should Client recover money, Client agrees to pay
Attorneys the greater of Attorneys' 'lodestar' . . . or a sum equal to thirty-three
percent (33%) of the total amount of the Gross Value of the settlement or award.
'Gross Value' means the total of all monetary awards ...including back and front
pay, damages and Attorneys' fees, but excluding 'expenses.'

In addition, Wiggins' fee and expense contract with the *Bennett* plaintiffs states that

Wiggins will be reimbursed all costs expended:

4.      **Expenses**

Client understands and agrees that Attorneys shall be reimbursed (out [o]f any
recovery obtained) for all expenses advanced by Attorneys in the prosecution of
Client's claims before there is any distribution of Attorneys' fees of the Client's
recovery.[8]

Wiggins states he told the *Bennett* plaintiffs that Coulter had been brought into the

*Bennett* action to serve as their local counsel and that Coulter would be paid pursuant to the

terms of paragraph 3 of Wiggins' fee and expense contract with the *Bennett* plaintiffs, *i.e.* that

Coulter was one of the "Attorneys" referred to in paragraphs 3 and 4 of the fee and expense

contract.  Wiggins states that the *Bennett* plaintiffs agreed to pay Coulter on that basis without

objection.

Judgement on the jury verdict in the *Bennett* action, which also provided for interest and

---

[8] Paragraph 6 of the fee and expense contract provides that "[i]f the Client does not abide
by any of the paragraphs 2, 3, 4 or 5, above, Attorneys shall have the lien on any recovery
regarding Client's claims for their legal fees and/or expenses.  Client Hereby grants Attorneys a
lien on any claims that are the subject of Client's claims and Attorneys' representation under this
Agreement.  The Attorneys' lien will be for all sums owed to Attorneys under this Agreement.
The lien will attach to any recovery Client may obtain, whether by court award or judgment,
settlement, arbitration award, or otherwise."

costs, was entered on November 4, 2009.  The parties thereafter filed cross appeals to the United

States Court of Appeals for the Eighth Circuit.

On September 22, 2011, the Eighth Circuit affirmed the judgment on the jury verdict.

Following the Eighth Circuit's decision, Wiggins received $201,459.71 on behalf of each

*Bennett* plaintiff.  The *Bennett* plaintiffs thereupon executed reimbursement agreements with

Wiggins that provide as follows:

### Disbursement of Funds To [plaintiff] (*Bennett, et. al, vs. Nucor*)

| | |
|---|---|
| Amount deposited in escrow/trust account: | $201,459.71 |
| Less share of expenses:<br>([plaintiff] share is 1/6 of $300,000 total) | $50,000.00 |
| Subtotal after expenses: | $151,459.71 |
| Less 1.3 attorney fee as per contract: | $50,486.57 |
| Total Disbursement as of December 9, 2011 | $100,973.14 |

I, [plaintiff], acknowledge that I have received this accounting of the funds
received on his behalf from Nucor Corporation and Nucor-Yamato LP in payment
of his judgment in the case *Bennett, et al. Nucor*.  I have read the foregoing
disbursement schedule or had it read to me.  I fully understand and agree to the
disbursement schedule set forth above, including the amount I am to receive.  I
also acknowledge that my attorneys handled my claim satisfactorily and hereby
release and discharge all claims or complaints against them.  I further
acknowledge that the above disbursements were made pursuant to my agreement
with my attorneys.

Based on the reimbursement agreements, Wiggins, in December 2011, paid each *Bennett*

plaintiff $100,973.14 in partial satisfaction of his judgment.

Also in December 2011, the *Bennett* plaintiffs timely moved for attorney's fees and costs.

By order entered September 10, 2012, the Court awarded the *Bennett* plaintiffs attorney's fees in

the amount of $920,688.[9]  As the lodestar awarded by the Court was greater than 33% of the total

amount of the "Gross Value" recovered ($2,120,688), Wiggins claimed the lodestar fee pursuant

to the terms of paragraph 3 of Wiggins' fee and expense contract with the *Bennett* plaintiffs.

Prior to the Court's ruling on the *Bennett* plaintiffs' motion for attorney's fees, Wiggins,

by checks issued in December 2011 and January 2012, paid WCQP approximately $600,000 out

of the *Bennett* plaintiffs' gross recovery.  Wiggins states that amount was "the fee and expense

portions that were not in dispute."  Coulter, however, states that Wiggins was not entitled to

appropriate the *Bennett* plaintiffs' monies before he knew how the Court was going to rule on the

fee request and that he never told Coulter he had taken approximately $600,000 in fees as of

January 2012.

Following the Court's order on the *Bennett* plaintiffs' motion for attorney's fees,

Wiggins, on November 20, 2012, sent an email to Coulter notifying him that a contingent

percentage fee would not be claimed from the *Bennett* plaintiffs' judgments.  The email

provided:

> Nate:
>
> We are trying to finalize the payments to the 6 clients from their individual
> judgments of $201,459.71.  Because of the independent fee award, we are not
> planning on claiming any contingent percentage fee from this amount.  Given this
> fact, what do you want me to do on your fees?

Coulter's understanding of his and Wiggins' fee agreement, as reflected in the April 2007

emails and August 2007 letter, is that he would receive an amount equal to 10% of the clients'

gross recovery, which was $120,875.82, and that in addition (rather than in lieu of), he was

---

[9] The Court also awarded costs in the amount of $136,977.12.

-8-

entitled to submit his separate lodestar petition, which was $10,231.00.[10]   Coulter states that

when the time came to submit a fee application, Wiggins requested that Coulter not submit his

separate lodestar fee application because his requested hourly rate was so much lower than what

Wiggins wanted this Court to award him.   Coulter states that Wiggins agreed to pay him his

lodestar fee if he would not submit his own petition, to which Coulter agreed not to do, but that

Wiggins made no request to amend or modify the separate contingency fee amount equal to 10%

of the gross recovery received by the *Bennett* plaintiffs.   Coulter states that following this

Court's fee award that was substantially less than what Wiggins requested, Wiggins made a

unilateral decision to "waive" the contingency fee component of his fee and expense contract

with the *Bennett* plaintiffs, choosing instead to rely entirely on his lodestar fee application.   As

reflected in Wiggins' November 20, 2012 email, Coulter states that Wiggins asked him what he

wanted to do in light of this development and that he informed Wiggins that his agreement was

with Wiggins, that it contained no provision allowing Wiggins to escape his obligation to pay

Coulter the promised 10% of the *Bennett* plaintiffs' gross recovery by "waiving" his own

contingency fee, and that Coulter was entitled to receive from Wiggins the 10% amount based on

the recovery and his lodestar amount.

Wiggins, however, claims that the only contract that ever applied to Coulter was the fee

and expense contract that Wiggins had with the *Bennett* plaintiffs.   He states that Coulter never

asked Wiggins to assist him in obtaining a new fee and expense contract with the *Bennett*

---

[10] The combined total of 10% of the gross recovery and the lodestar fee is $131,106.82 and it is that amount that Coulter seeks by way of his action against Wiggins. Compl. at ¶ 5. The Court notes that Wiggins states there is no case or controversy about payment of Coulter's lodestar and that he has continuously offered to pay Coulter his full lodestar that he set forth in his affidavit.

plaintiffs and that it was always understood that the fee and expense contract that Wiggins had

with the *Bennett* plaintiffs would apply to Coulter.  Wiggins states that the *Bennett* plaintiffs and

Coulter agreed to that arrangement and that the only thing Coulter asked Wiggins to do was to

get the *Bennett* plaintiffs' permission for Coulter to represent them, which Wiggins states he did.

Wiggins goes on to state that he and his firm never agreed to pay Coulter to represent the *Bennett*

plaintiffs out of their own pocket nor did they hire or retain Coulter to represent Wiggins.

Rather, Wiggins states that Coulter represented no one other than the *Bennett* plaintiffs and that

his sole appearance or work was as the *Bennett* plaintiffs' local counsel in the *Bennett* action.

In the meantime, in December 2012, McBride and Green executed Final Disbursement of

Funds agreements with Wiggins.[11]  McBride's Final Disbursement of Funds agreement, dated

December 21, 2012, provides as follows:

### Final Disbursement of Funds To Larry McBride (*Bennett, et. al, vs. Nucor*)

Amount deposited in escrow/trust account:  $201,459.71

Less amount already paid last year:  $100,933.14

Less share of expenses Nucor not
required to reimburse:  $50,000.00

Less amount reserved for possible
payment to local attorney:  $5,833.00
                                        _____

Final amount due on judgment:  $44,695.57[12]

---

[11] *Bennett* plaintiff Rodney Washington, who as previously noted is not involved in this
current action, also executed a Final Disbursement of Funds agreement, dated May 21, 2013.

[12] Actually, the sum total of McBride's Final Disbursement of Funds agreement is
$44,693.57.  The Court notes that although McBride's and Green's Final Disbursement of Funds
agreements indicate they were earlier paid $100,933.14 in partial satisfaction of their judgment,

I, Larry McBride, acknowledge that I have received this accounting of the $201,459.71 from Nucor Corporation and Nucor-Yamato LP in payment of my judgment in the case *Bennett, et al v Nucor*.  I have read the foregoing disbursement schedule.  I fully understand and agree to the disbursement schedule set forth above, and agree that it complies with my original fee and expense agreement by deducting $50,000 for expenses in the case that I have not been reimbursed by Nucor.  I also acknowledge that my attorneys handled my claim satisfactorily and hereby release and discharge all claims or complaints against them. I further acknowledge that the above disbursements were made pursuant to my original contract with my attorneys.

Green's Final Disbursement of Funds agreement, dated December 7, 2012, provides as

follows:

### **Final Disbursement of Funds To Ozzie Green (*Bennett, et. al, vs. Nucor*)**

| | |
|---|---|
| Amount deposited in escrow/trust account: | $201,459.71 |
| Less amount already paid last year: | $100,933.14 |
| Less share of expenses Nucor not required to reimburse: | $50,000.00 |
| | _____ |
| Final amount due on judgment: | $50,526.57 |

I, Ozzie Green, acknowledge that I have received this accounting of the $201,459.71 from Nucor Corporation and Nucor-Yamato LP in payment of my judgment in the case *Bennett, et al. Nucor*.  I have read the foregoing disbursement schedule.  I fully understand and agree to the disbursement schedule set forth above, and agree that it complies with my original fee and expense agreement by deducting $50,000 for expenses in the case that have not been reimbursed by Nucor.  I also acknowledge that my attorneys handled my claim satisfactorily and hereby release and discharge all claims or complaints against them.  I further acknowledge that the above disbursements were made pursuant to my original contract with my attorneys.

Wiggins states he has paid McBride and Green according to their Final Disbursement of

---

Wiggins and intervenors seem to agree, and the Disbursement of Funds agreements in the record reflect, that each *Bennett* plaintiff was earlier paid $100,973.14 in partial satisfaction of their respective judgment.

Funds agreements and that they are now paid in full.  McBride and Green, however, claim they were induced to sign these agreements by Wiggins' alleged false statements.

For their part, Rogers, Bennett, and Lee apparently declined to execute Final Disbursement of Funds agreements and, according to Wiggins, have declined to accept payment until the amount remaining due under their fee and expense contract has been determined by the Court.  In this respect, Wiggins states that at the intervenors' instruction, he declined to disburse the $130,000 demanded by Coulter until his claim has been determined by the Court or otherwise resolved, and Wiggins states that he also has withheld litigation expenses that intervenors contracted to reimburse in paragraph 4 of their fee and expense contract.  Wiggins states that the resolution of these issues requires interpretation of the same contractual provisions of the intervenors' fee and expense contract that is at issue in Coulter's claim and Wiggins' defense to such claim.

There apparently is also a dispute concerning the amount of unreimbursed expenses owed by each *Bennett* plaintiff.  Wiggins' motion for judgment on the pleadings against the complaint in intervention [doc.#11], which the Court denied without prejudice by order entered June 18, 2013 [doc.#12], states in footnote 2 as follows:

> The six *Bennett* plaintiffs were responsible under ¶ 4 of their contract to pay the $424,150 in expenses remaining unpaid after they were credited with the $136,977[.12] in expenses that Nucor reimbursed on their behalf.  WCQP, however, has limited the amount of expenses withheld to 25% ($50,000) of the $200,000 judgment of each plaintiff, leaving $124,150 in such expenses unsecured.

Citing this footnote, Rogers, Bennett, and Lee state that Wiggins is limiting unreimbursed expenses to $50,000 for each *Bennett* plaintiff.  Wiggins, however, states in an affidavit that footnote 2 only referred to the modification Wiggins reached with the other three

-12-

*Bennett* plaintiffs–McBride, Green, and Washington–and that it did not refer to Rogers, Bennett, and Lee, who rejected that proposed modification.  Similarly, Wiggins states in his response to the motion for summary judgment filed by Rogers, Bennett, and Lee that their assertion that the fee and expense contract between Wiggins and the *Bennett* plaintiffs was modified to limit unreimbursed expenses to $50,000 for each *Bennett* plaintiff "is a disputed issue of fact" as Wiggins' affidavit states that no such agreement was reached with Rogers, Bennett, and Lee. Elsewhere, however, Wiggins states that "[r]ather than deducting the full $412,721.85 of the unreimbursed expenses from the *Bennett* plaintiffs' damage award as their contract provides, WCQP agreed to forego reimbursement of all but $300,000 of that sum ($50,000 each for a total of $300,000)" and that the December 2011 disbursement agreements signed by the *Bennett* plaintiffs "stipulate[] '$50,000' to be the proper sum to be deducted from their damage awards for unreimbursed expenses."

## II.

Rogers, Bennett, and Lee move for summary judgment against Wiggins on grounds that the dispute between Coulter and Wiggins has nothing to do with the money owed the *Bennett* plaintiffs, that Wiggins is limiting unreimbursed expenses to $50,000 for each *Bennett* plaintiff, and that Rogers, Bennett, and Lee are thus each owed $50,486.57.

Wiggins moves for summary judgment against McBride, Green, Rogers, Bennett, and Lee on grounds that they are all contractually responsible to pay the expenses remaining unpaid after they were credited with the $136,977 in expenses that Nucor reimbursed on their behalf and that McBride's and Green's breach of fiduciary duty and fraud claims fail because a breach of contract is not a proper basis for allegations of breach of fiduciary duty and fraud.

-13-

Wiggins moves for summary judgment against Coulter on grounds that he only entered into an agreement with Wiggins to divide the contingent percentage of the *Bennett* plaintiffs' damages that would be due to Wiggins, if any, pursuant to Wiggins' fee and expense contract with the *Bennett* plaintiffs and that Wiggins' fee and expense contract with the *Bennett* plaintiffs allowed the attorneys for the *Bennett* plaintiffs, which included Coulter, to receive the greater of either their lodestar or 33% of the total award, but not both.

A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the

-14-

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

B.

The Court has considered the record and determines that there are simply too many disputed issues of material fact at this time to grant summary judgment to any party. These issues include (but are not limited to) the nature of Coulter's fee agreement with Wiggins and the amount he is due under that agreement, whether Wiggins is withholding money due the *Bennett* plaintiffs in order to pay those sums allegedly due Coulter, whether Wiggins' fee and expense contract with the *Bennett* plaintiffs applies to Coulter, whether the *Bennett* plaintiffs authorized the hiring of Coulter as local counsel, whether Wiggins is limiting the amount of expenses to $50,000 for each *Bennett* plaintiff, whether the circumstances surrounding the execution of McBride's and Green's Final Disbursement of Funds agreements will support breach of fiduciary duty and fraud claims, and the circumstances (or relevance) surrounding Wiggins allegedly taking some $600,000 from the *Bennett* plaintiffs out of his firm's trust account before he knew how the Court was going to rule on his lodestar fee request. Many of these issues will involve credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts that are jury functions and not those of a judge. *Reeves*, 530 U.S. at 150.

III.

For the foregoing reasons, the Court denies the motion for summary judgment [doc.#17] by Rogers, Bennett, and Lee against Wiggins, denies the motion for summary judgment

-15-

[doc.#38] by Wiggins against McBride, Green, Rogers, Bennett, and Lee, and denies the motion

for summary judgment [doc.#39] by Wiggins against Coulter.

IT IS SO ORDERED this 10th day of February 2014.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE